Paul Marron, Esq., State Bar No. 128245
Jerome Burger, Esq., State Bar No. 167045
MARRON LAWYERS
320 Golden Shore
Suite 410
Long Beach, CA 90802
(562) 432-7422

Attorneys for SUPERSHUTTLE
INTERNATIONAL, INC., SUPERSHUTTLE
FRANCHISE CORPORATION, SUPERSHUTTLE
LOS ANGELES, INC., MINI-BUS SYSTEMS, INC.,
SACRAMENTO TRANSPORTATION SERVICES,
INC., SUPERSHUTTLE OF SAN FRANCISCO,
INC. AND CLOUD 9 SHUTTLE, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SUPERSHUTTLE INTERNATIONAL, INC., SUPERSHUTTLE FRANCHISE CORPORATION, SUPERSHUTTLE LOS ANGELES, INC., MINI-BUS SYSTEMS, INC., SACRAMENTO TRANSPORTATION SERVICES, INC., SUPERSHUTTLE OF SAN FRANCISCO, INC. AND CLOUD 9 SHUTTLE, INC.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**PATRICK W. HENNING, CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT, and DOES 1 through 30, inclusive,**<br><br>Defendants. | Case No.: 09-CV-1825-JAH(NLS)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: November 16, 2009<br>Time: 2:30 p.m.<br>Courtroom: 11 (Hon. John A. Houston)<br>Action Filed: 8/24/2009 |

///

///

---

# TABLE OF CONTENTS

HEADING                                                                      PAGE

TABLE OF AUTHORITIES                                                          ii

I.      INTRODUCTION                                                          1

II.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO                           4
        DISMISS

        A. Defendants Do Not Satisfy the High Standards for a Rule 12(b)      4
           Motion

        B. The Court Has Subject Matter Jurisdiction Because SuperShuttle     7
           Has Alleged Violations Of The Constitution And/Or The Laws
           Of the United States

        C. The Court Also Has Supplemental Jurisdiction Over The State        9
           Law Claims Because They Derive From A Common Nucleus Of
           Operative Facts

        D. SuperShuttle Has Standing to Bring Suit Against EDD, Henning       10
           And The Doe Defendants Because EDD's Audit Report Requires
           SuperShuttle To Invalidate Its Franchise Business Model

        E. The Present Action Is Not Barred By the Eleventh Amendment         13
           Because SuperShuttle Is Seeking Prospective Injunctive And
           Declaratory Relief

        F. Any Exaction Imposed By EDD Is Not A "Tax" For Purposes Of         15
           The Tax Injunction Act

             i.  The Tax Injunction Act does not apply when the court is      18
                 addressing the issue of state tax administration and/or
                 procedure

        G. SuperShuttle Does Not Need to Exhaust Administration              19
           Remedies As It Has Filed an Action Under Title 42 Section 1983

III.    CONCLUSION                                                            21

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE

*ACS of Fairbanks, Inc. v. GCI Comm. Corp.*, 321 F.3d 1215 (9th Cir. 2003)                14

*Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041 (9th Cir. 2000)       13, 14

*Alexander v. City of Menlo Park*, 787 F.2d 1371 (9th Cir. 1986)                          20

*Allied Signal, Inc. v. City of Phoenix*, 182 F.3d 692 (9th Cir. 1999)                    4

*Armistead v. State Personnel Board*, 22 Cal. 3d 198 (Cal. 1978)                          8

*Ass'n of Data Processing Service Org. v. Camp*, 397 U.S. 150 (1970)                      11

*Barberic v. City of Hawthorne*, 669 F. Supp. 985 (C.D. Cal. 1987)                        20

*Bell v. Hood,* 327 U.S. 678 (1946)                                                       8

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002)                        7

*Bidart Brothers v. California Apple Comm'n*, 73 F.2d 925 (9th Cir. 1996)               16, 17

*Buono v. Schwartz v. Norton*, 371 F.3d 543 (9th Cir. 2004)                               10

*Campanelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1996)                                   6

*Clinton v. Babbitt*, 180 F.3d 1081(9th Cir. 1998)                                        7

*Committee to Save Mokelume River v. East Bay Municipal District*, 13 F.3d 305            13
(9th Cir. 1993)

*Council of Ins. Agents and Brokers v. Restrepo*, 522 F.3d 925 (9th Cir. 2008)          10, 11

*Crumpton v. Gates*, 947 F.2d 1418 (9th Cir. 1991)                                        20

*Ex Parte Young*, 209 U.S. 123 (1908)                                                    13-15

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)                            11

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1           7
(1983)

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)                             5

*Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986)                           5

*Heath v. Cleary*, 708 F.2d 1376  (9th Cir. 1983)                                        20

*Hexom v. Oregon Dept. of Transportation*, 177 F.3d 1134 (9th Cir. 1999)               16-17

ii

| CASES | PAGE |
|---|---|
| *Hibbs v. Winn*, 542 U.S. 88 (2004) | 19 |
| *Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003). | 5 |
| *La Raza Unida v. Volpe*, 337 F. Supp. 221(N.D Cal. 1971) | 14 |
| *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) | 5 |
| *Luessenhop v. Clinton County*, 466 F.3d 259 (2nd Cir. 2006) | 19 |
| *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002) | 9, 11 |
| *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) | 7 |
| *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) | 14 |
| *NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) | 5 |
| *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) | 5 |
| *Order Instituting Investigation into the Passenger Stage Corporation Operations of Prime Time Shuttle International, Inc.*, 1996 Cal. PUC LEXIS 854 (August 2, 1996) | 10 |
| *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007) | 20 |
| *Pacific Bell Tel. Co. v. City of Hawthorne*, 188 F. Supp. 2d 1169 (C.D. Cal. 2001) | 16 |
| *Pacific Gas and Elec. Co. v. City of Union City*, 220 F. Supp. 2d 1070 (N.D. Cal. 2002) | 17 |
| *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982) | 19, 20 |
| *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) | 6 |
| *Qwest v. City of Berkeley*, 146 F. Supp. 2d 1081 (N.D. Cal. 2001) | 16 |
| *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179 (9th Cir. 1997) | 13, 14 |
| *The Presbyterian Church v. U.S.*, 870 F.2d 518 (9th Cir. 1989) | 11 |
| *Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Desert Valley Landscape and Maint., Inc.*, 333 F.3d 923 (9th Cir. 2003) | 9 |
| *Union Pacific Railroad Co. v. Pub. Util. Comm'n of the State of Oregon*, 899 F.2d 854 (9th Cir. 1990) | 17 |
| *United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981) | 5 |
| *Verizon Md., Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635 (2002) | 14 |

iii

| STATUTES | PAGE |
|---|---|
| 28 U.S.C. § 1331 (2009) | 7 |
| 28 U.S.C. § 1367(a) | 9 |
| 42 U.S.C. § 1983 | 19, 20 |
| Cal. Unemp. Ins. Code § 13052.5 | 3, 6, 21 |
| Cal. Pub. Util. Code § 1759 (2009) | 10 |
| Fed. R. Civ. P. 8(a) | 4 |
| Fed. R. Civ. P. 12(b)(6) | 4 |

OTHERS

| | |
|---|---|
| *http://www.edd.ca.gov/About_EDD/Mission_and_Vision.htm* | 18 |
| W. Schwarzer, *Federal Civil Procedure Before Trial*, ¶ 9:286 (Rutter Group 2005) | 3 |

**Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint 3:09-CV-01825-JAH (NLS)**

012164/2007-1080.030

1   Defendants California Employment Development Department, Patrick W. Henning and the

2   Doe Defendants have collectively filed a Motion to Dismiss[1] the complaint (the "Complaint") of

3   Plaintiffs SuperShuttle International, Inc., SuperShuttle Franchise Corporation, SuperShuttle Los

4   Angeles, Inc., Mini-Bus Systems, Inc., Sacramento Transportation Services, Inc., SuperShuttle of

5   San Francisco, Inc. and Cloud 9 Shuttle, Inc. (collectively, "Plaintiffs" or "SuperShuttle")

6   pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   Plaintiffs

7   respectfully submit this memorandum of points and authorities in opposition to Defendants'

8   Motion to Dismiss.

9   

10   **I.       INTRODUCTION**

11   Plaintiffs' action seeks declaratory and injunction relief under the Equal Protection Clause

12   of the United States Constitution, the Due Process Clause of the Fifth and Fourteenth Amendment

13   to the United States Constitution, Title 42 U.S.C. § 1983, the Contracts Clause in the United States

14   Constitution and under the laws and the constitution of the State of California.   The action is based

15   upon Defendants' arbitrary and capricious act of improperly applying tests and criteria from a

16   "Taxicab Information Sheet," derived from the Employment Development Department's ("EDD"

17   or the "Department") audits of companies in the taxicab business – an industry that is very

18   different from the airport shuttle industry.   Defendants' acts directly affect vested contractual

19   rights of Plaintiffs and third parties (e.g., the SuperShuttle franchisees), and will effectively render

20   such rights to be moot.

21   ///

22   ///

23   

24   

25   

26   

27   

28   

---

[1] References to pages and lines in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss as Mot. _:_.

1

Plaintiffs are not involved in the taxicab business. The on-demand shared ride shuttle industry is heavily regulated by the California Public Utilities Commission ("PUC") and by the airport and other local authorities. The PUC, a body of State Constitutional origin, possesses broad jurisdiction to regulate both SuperShuttle and its franchisees and has exercised its authority to proscribe the business relationship between SuperShuttle and its franchisee-drivers.

It is undisputed in this case that the Taxicab Information Sheet was *not* promulgated pursuant to the legal requirements for administrative rule making as set forth in the California Administrative Procedure Act. As such, it is void of any legal effect.[2] Defendants' application of the Taxicab Information Sheet to the airport on-demand shared ride shuttle industry is arbitrary and capricious. Moreover, it threatens to irreparably damage Plaintiffs in its business dealings by throwing uncertainty into long-established contractual rights and obligations created by its licensing and franchise contracts. Defendants appear to have made an actual or *de facto* agency-wide policy determination that all airport on-demand shared ride shuttle companies operating within California are to be characterized as operating under an employee-based, not independent franchisee, business model. Plaintiffs have not been adequately notified nor have they been afforded an opportunity to heard prior to the Defendants' adoption of these tests and criteria, in violation of Plaintiffs' constitutional rights under color of law.

Defendants are pursuing this course notwithstanding the fact that the Commission, in a carefully considered and comprehensive decision, has determined that the business structure with

---

[2] At a minimum, the Taxicab Information Sheet should be revised and updated to reflect the fact that the *Santa Cruz Transp. v. Unemployment Ins. Appeals Bd.*, 235 Cal. App. 3d 1363 (Cal. Ct. App. 1991) decision ("Santa Cruz") on which it is based upon is almost twenty-years old. The factors on which the Santa Cruz decision is based is not indicative of how things currently operate in the taxicab and on-demand airport shuttle industry. The Taxicab Information Sheet needs to be revised and updated to reflect technological changes such as, but not limited to, the use of computers which allow taxicab drivers and SuperShuttle franchisees to see each fare presented to them along with an option to accept or reject the fare and the ability of SuperShuttle franchisees to log into SuperShuttle's proprietary fare generation system on any given night and schedule all of their fares and pickups for the next day. These technological advances were not in place when the Santa Cruz opinion was issued and as such, the Taxicab Information Sheet is outdated and need to be revised to reflect changes which have fundamentally altered the taxicab and on-demand airport shuttle industry.

2

which SuperShuttle and its franchisees operate does not contravene PUC regulations, state statues or sound public policy.  Were the course followed by the Defendants to come to fruition, the Commission's decision would be effectively nullified.

The Court should declare the Taxicab Information Sheet to be invalid and enjoin its enforcement until the Defendants have complied with the administrative ruling making procedures set forth in the California Administrative Procedure Act.  This Court should also declare the licensing and franchise contracts between SuperShuttle and its franchisees to be valid and enforceable, imposing legal obligations and duties upon both parties.

If Defendants were to invalidate the business model (and, by extension, the vested contractual rights) of SuperShuttle, it is reasonable to expect that they will use another "underground regulation"[3] to impose a significant penalty on SuperShuttle for not issuing Federal forms to its franchisees.  The EDD presently has a rule in place requiring that a penalty imposed under California Unemployment Insurance Code § 13052.5 be paid in full before petition rights are obtained.   Not only is this rule yet another invalid "underground regulation," it is unconstitutional – violating the due process rights of those subjected to it.  Accordingly, the Court should also enjoin the EDD from enforcing this rule until the EDD has adhered to the requirements set forth in the California Administrative Procedure Act.

Defendants have filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss.  The Defendants do not single out one or two claims which, if dismissed, might streamline the case.  Instead, the Defendants contend that all eight claims should be dismissed, without leave to amend.  Bus as the Ninth Circuit has repeatedly held, such motions are disfavored, rarely granted and, even when granted, often lead only to a round of amended pleadings since, "[a]s a practical matter, leave to amend is almost always granted by the court."  W. Schwarzer, *Federal Civil Procedure Before*

---

[3] As discussed thoroughly in the complaint, an "underground regulation" is a state rule, regulation, order, or standard of general application that has not been promulgated pursuant to the legal requirements set forth in the California

3

*Trial*, ¶ 9:286, p. 9-80 (Rutter Group 2005).

The Defendants' motion does not meet the high standards necessary to prevail under Rule 12(b). Rather than testing the sufficiency of Plaintiffs' factual allegations, the Defendants' motion calls for the Court evaluate the *merits* of Plaintiffs' claims. For instance, Defendants assert that a Plaintiffs is trying to avoid payment of taxes even when it plainly acknowledges in its Memorandum of Points and Authorities that no assessment has been issued against SuperShuttle. Therefore, the Defendants erroneously ask the Court to go beyond the pleadings and rule to the contrary on this claim. To prevail on a motion under Rule(b)(6), the Defendants must show that SuperShuttle has failed to allege *any facts* which, if true, would entitle SuperShuttle to relief. The Defendants have utterly failed to meet this burden. Even where the Defendants raise legal issues, they are irrelevant – such as arguing that sovereign immunity applies even when it is clear that Plaintiffs are only seeking prospective injunctive and declaratory relief. The Supreme Court and cases from the Ninth Circuit uniformly hold that sovereign immunity does not apply in instances where the plaintiff seeks prospective equitable relief.

Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety.

## II.      THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.

### A.      Defendants Do Not Satisfy the High Standards for a Rule 12(b) Motion.

Under the liberal notice pleading standards in the Federal Rules, a plaintiff need only set forth "a short and plaint statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)), ensuring that the defendant has "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Allied Signal, Inc. v. City of Phoenix*, 182 F.3d 692, 696-97 (9th Cir. 1999). "Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8, which requires a 'short and plain statement

---

Administrative Procedures Act. *See* Cal. Gov. Code § 11340.5 (2009).

showing that the pleader is entitled to relief' and 'contains a powerful presumption against

rejecting pleadings for failure to state a claim.'" *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200

(9th Cir. 2003).  Hence, many courts view Rule 12(b)(6) motions with "disfavor" because of the

lessor role pleadings play in federal practice and the liberal policy regarding amendment. *See,*

*e.g., Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ('"The motion to dismiss for

failure to state a claim is viewed with disfavor and rarely granted'") (quoting 5 Wright & Miller,

*Federal Practice & Procedure*, § 1357, at 598 (1969)); *Hall v. City of Santa Barbara*, 833 F.2d

1270, 1274 (9th Cir. 1986) (reversing grant of 12(b)(6) motion and observing that "[i]t is

axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is

rarely granted").

In light of these principles, courts apply high standards in ruling on 12(b)(6) motions.

First, "[a] claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief.'" *Navarro v. Block*, 250 F.3d

729, 732 (9th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "Under this rule

it is only the extraordinary case in which dismissal is proper." *United States v. City of Redwood*

*City*, 640 F.2d 963, 966 (9th Cir. 1981); *see also United States v. White*, 893 F. Supp. 1423, 1428

(C.D. Cal. 1995) ("The motion [to dismiss] is disfavored; dismissal is proper only in

'extraordinary' cases").

Second, "[i]n deciding such a motion, all material allegations of the complaint are accepted

as true, as well as all reasonable inferences to be drawn from them." *Navarro v. Block*, 250 F.3d

at 732.  Allegations are construed in the light most favorite to the non-moving party. *See NL*

*Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *see also Lee v. City of Los Angeles*, 250

F.3d 668, 679 (9th Cir. 2001) (reversing grant of motion to dismiss where "the district court's

decision to dismiss plaintiff's federal claims was rooted in defendants' factual arguments").  Any

facts pled generally are to be credited as embracing "whatever specific facts might be necessary to support [the claims]." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). When a complaint's allegations are capable of more than one inference, the court must adopt whichever inference supports a valid claim.

Third, any "[d]efect must appear on [the] face of the complaint." *See, e.g., Campanelli v. Bockrath*, 100 F.3d 1476, 1484 (9th Cir. 1996) (holding that "the district court impermissibly went beyond the allegations of the complaint to play factfinder at the 12(b)(6) stage").

It is clear in this case that Defendants do not meet the high standards for a Rule 12 motion.[4]  A review of the Complaint spells out quite specifically innumerable facts detailing why Plaintiffs' rights are being violated.  Among them and as discussed, *supra*, Defendants are using an illegal and void "underground regulation" to invalidate the licensing and franchise contracts of the Plaintiffs.  The nullity of these vital agreements would effectively destroy SuperShuttle's business model and cause it to suffer irreparable harm.  Moreover, there is another "underground regulation" at issue as the Defendants have adopted a rule that mandates that all penalties imposed under California Unemployment Insurance Code § 13052.5 must be paid in full before appeal rights are obtained.  At this stage of litigation, these allegations set forth in SuperShuttle's complaint "must be accepted as true, as well as all reasonable inferences to be drawn from them."

In addition, SuperShuttle's Complaint contains no defects which appear on its face.  As discussed, *infra*, the Complaint clearly states causes of action arising under the Constitution and/or the laws of the United States and asks this Court to issue prospective injunctive and declaratory relief.  This Court is not permitted to look beyond the allegations of the complaint and play fact

---

[4]  This high standard is evident in the cases cited by the Defendants (Mot. 6:27-28 and Mot. 7:1-2), which involved *reversals* of 12(b)(6) motions.  *See Johnson v. Riverside Healthcare Systems*, 534 F.3d 1116, 1123 (9th Cir. 2008) (reversing dismissal of section 1981 claim since "the complaint puts forth 'enough facts to state a claim for relief that is plausible on its face'"); *Campanelli v. Bockrath*, 100 F.3d 1476, 1484 (9th Cir. 1996) (reversing dismissal of section 1983 claims).

6

finder at this stage in the litigation. As such, Defendants' Motion to Dismiss should be denied as Defendants' have not satisfied the exceedingly strict standards for these types of motions.

**B.**   **The Court Has Subject Matter Jurisdiction Because SuperShuttle Has Alleged Violations Of The Constitution And/Or The Laws Of The United States.**

28 U.S.C. § 1331 gives federal courts "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2009). A case "arises under" the Constitution and/or federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or that the "plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542; 95 L. Ed. 2d 55 (1987) (holding that "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law").

This court possesses subject matter jurisdiction in this case as SuperShuttle is seeking injunctive and declaratory relief alleging numerous causes of action against the Defendants which are based upon rights that arise out of the Constitution and/or the laws of the United States. SuperShuttle has alleged that Defendants actions violate, *inter alia*, the Equal Protection Clause, the Due Process Clause of the Fifth and Fourteenth Amendment, the Contracts Clause of the Constitution and the Civil Rights Act, 42 U.S.C. § 1983. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (finding that subject matter jurisdiction existed when plaintiffs brought an action under 42 U.S.C. § 1983); *Clinton v. Babbitt*, 180 F.3d 1081, 1087 (9th Cir. 1998) (holding that "plaintiffs have alleged a substantive basis for the invocation of federal question jurisdiction under the Equal Protection Clause of the Fifth Amendment"). The Supreme Court has acknowledged that it is "established practice … to sustain the jurisdiction of federal

1   courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain

2   individual state officers from doing what the 14th Amendment forbids the State to do." *Bell v.*

3   *Hood*, 327 U.S. 678, 684, S. Ct. 773, 90 L. Ed. 939 (1946).[5]

4       In this case, among other things, Plaintiffs are alleging that its procedural due process

5   rights have been violated because it has not been afforded notice an opportunity to be heard before

6   Defendants created the Taxicab Information Sheet.   This "underground regulation" was not

7   adopted pursuant to the procedures and process set forth by the California Administrative

8   Procedures Act and will be used to harm SuperShuttle's vested contractual rights by invalidating

9   its licensing and franchise contracts currently in place.   Indeed, the California Administrative

10  Procedures Act is specifically in place to provide a procedure whereby the entities to be affected

11  by a proposed rule, regulation, order, guideline, or bulletin be given notice and an opportunity to

12  be heard on the merits of the proposed rule, regulation, order, guideline, or bulletin.   *See*

13  *Armistead v. State Personnel Board*, 22 Cal. 3d 198, 204 (Cal. 1978).

14      Plaintiffs' substantive due process rights are likewise being violated in that its licensing

15  and franchise contracts constitute a vested and cognizable property interest and that its subsequent

16  invalidation by Defendants is unfair, arbitrary, capricious and lacking in a rational basis.   Before

17  engaging in its current course of action, the Defendants were well aware of SuperShuttle's

18  property rights as the California Department of Corporations and the Federal Trade Commission

19  had already granted SuperShuttle the right to issue franchises and the right enter into valid

20  franchise contracts.   Despite this knowledge, Defendants are attempting to invalidate

21  SuperShuttle's licensing and franchise contracts without proceeding in the manner required by

---

[5] Defendants' reliance on the cases cited on page 2 of its Motion to Dismiss is misplaced. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) and *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221 (9th Cir. 1989) did not involve federal question jurisdiction, but diversity jurisdiction which is not at issue in this case. In fact, the Ninth Circuit in *Stock West*, found that subject matter jurisdiction existed, but deferred hearing the case due to comity concerns. Moreover, the Ninth Circuit in *Love v. United States*, 915 F.2d 1242, 1247 (9th Cir. 1990) and *Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir. 1983) found that subject matter jurisdiction existed in both cases because plaintiffs alleged proper federal question jurisdiction.

law, taking action unsupported by substantial evidence, in knowing and direct contravention of the Constitution and the laws of the United States.

Here, the Court should hold that SuperShuttle has established subject matter jurisdiction in this case because its Complaint alleges causes of action against the Defendants arising out of the Constitution and/or the laws of the United States.

## C.   The Court Also Has Supplemental Jurisdiction Over The State Law Claims Because They Derive From A Common Nucleus Of Operative Facts.

The court not only has jurisdiction to hear SuperShuttle's claims against the Defendants arising out of the Constitution and under the laws of the United States, but also possesses supplemental jurisdiction to adjudicate the state law claims set forth in the complaint.  28 U.S.C. § 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to [the federal claims] that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a) (2009).  The Ninth Circuit holds that "[n]on-federal claims are part of the same 'case' as federal claims when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'"  *Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Desert Valley Landscape and Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003); *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1172-73 (9th Cir. 2002) (holding that supplemental jurisdiction exists "if the federal and state law claims 'derive from a common nucleus of operative fact'").

The state law claims in this case clearly arise out of a "common nucleus of operative facts" as the Constitutional claims and the claim arising out of the Civil Rights Act.  The arbitrary and capricious actions that Defendants have engaged in violation of SuperShuttle's Constitutional rights are also the same actions that form the basis of SuperShuttle's claims under state law.  Specifically, Defendants are attempting to utilize an "underground regulation" (the Taxicab Information Sheet) to invalidate SuperShuttle's licensing and franchise contracts notwithstanding

9

the fact that the California Public Utilities Commission, has already previously determined that the

business structure in which SuperShuttle and its franchisees operate does not contravene its

regulations, state statues or sound public policy.   If the Defendants are permitted to invalidate

Plaintiffs' franchise and licensing contracts, then the Commission's decision in *Order Instituting*

*Investigation into the Passenger Stage Corporation Operations of Prime Time Shuttle*

*International, Inc.,* 1996 Cal. PUC LEXIS 854, 67 CPUC2d 437 (August 2, 1996) would be

effectively nullified in direct contravention of California Public Utilities Code § 1759 which holds

that no court in California, except for the Supreme Court, can "review, reverse, correct, or annul

any order or decision of the commission or to suspend or delay the execution or operation thereof,

or to enjoin, restrain, or interfere with the commission in the performance of its official duties…."

Cal. Pub. Util. Code § 1759 (2009).

Therefore, the issue of the Defendants' actions with regard to the state law claim would

have been part of the same case or trial with respect to SuperShuttle's claims under the

Constitution and under the laws of the United States discussed, *supra*.   Accordingly, supplemental

jurisdiction is appropriate in this case and the Court should deny Defendants' Motion to Dismiss

for lack of subject matter jurisdiction.

> **D.** **SuperShuttle Has Standing To Bring Suit Against EDD, Henning And The Doe Defendants Because EDD's Audit Report Requires SuperShuttle To Invalidate Its Franchise Business Model.**

In the Ninth Circuit, standing can be established by satisfying a three-part test.  *See*

*Council of Ins. Agents and Brokers v. Restrepo,* 522 F.3d 925, 931 (9th Cir. 2008).   First, the

plaintiff must establish that injury in fact which is defined as "an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent."  *Id.* (quoting *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also*

*Buono v. Schwartz v. Norton,* 371 F.3d 543, 546 (9th Cir. 2004) ("To have standing, a plaintiff

'must have suffered an injury in fact' that is 'fairly traceable' to the challenged conduct, and 'it must be likely that the injury would be redressed by a favorable decision); *The Presbyterian Church v. U.S.*, 870 F.2d 518, 522 (9th Cir. 1989) (same).  Second, it must be established that there is a "causal connection between the injury and conduct complained of." *Id.*  Third, plaintiffs must show that the injury will be redressed by a favorable decision.  *Id.*  The Supreme Court has long held that standing for purposes of satisfying Article III can stem from both economic and non-economic injury.  *See Ass'n of Data Processing Service Org. v. Camp*, 397 U.S. 150, 153-54, 90 S. Ct. 827, 25 L. Ed. 184 (1970); *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d at 1172 (holding that injury in fact is established when plaintiff alleges economic harm); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 903 (9th Cir. 2002) ("[D]rain of organization's resources" satisfies the injury in fact requirement for standing).  Moreover, "[i]mpairments to constitutional rights are generally deemed adequate to support a finding of 'injury' for purposes of standing." *Council of Ins. Agents and Brokers v. Restrepo*, 522 F.3d at 931.

In this case, SuperShuttle satisfies the three part standing test.  First, Plaintiffs have suffered and will continue to suffer both economic and non-economic damages as a result of Defendants' action.  Specifically, Defendants' use of the void and illegal Taxicab Information Sheet will invalidate all of the licensing and franchise contracts that SuperShuttle has signed with its franchisees.  As alleged in the complaint, the Defendants actions invalidate SuperShuttle's entire franchise business model and unreasonably damages SuperShuttle economically by throwing uncertainty into long established contractual rights and obligations created by its licensing and franchise contracts.  Plaintiffs clearly suffers from economic injury as it can no longer rely on these vested licensing and franchise agreements as a means of securing, *inter alia*, franchisee fees, marketing fees and system use fees from its franchisees because the EDD's actions have effectively nullified these contracts.  In addition, SuperShuttle suffers from non-

11

economic injury in that its Constitutional rights to Due Process were violated because it was not adequately notified nor afforded an opportunity to be heard before EDD's adoption of the Taxicab Information Sheet that is used as a basis for invalidating SuperShuttle's franchise and licensing contracts.

Moreover, SuperShuttle's Equal Protection rights are being violated in that it is being specifically singled out by the Defendants who have attempted on numerous occasions to secure a finding that SuperShuttle's franchisees are not independent businesses.   There are other on-demand shared-ride shuttle companies operating in California, yet EDD has arbitrarily singled out SuperShuttle by repeatedly engaging in actions designed to secure an employee finding to be used against SuperShuttle like willfully ignoring an on point *M&M Luxury Shuttle* decision; seizing upon the untruthful and clearly frivolous claims of a discredited former SuperShuttle franchisee, Annette Juarez; interfering with an administrative hearing to which it was not a party; ghost writing portions of Ms. Jaurez' brief to the California Unemployment Insurance Appeals Board; and violating California confidentiality statutes by communicating and possibly coordinating with private sector attorneys.[6]

With respect to the causation requirement of the standing test, Defendants actions have caused SuperShuttle's injury by precluding it from being able to rely on its licensing and franchise agreements as a source of income.  The redressability requirement is met because a decision from this court that firmly prohibits Defendants from applying the Taxicab Information Sheet to SuperShuttle and from imposing a Section 13052.5 penalty on SuperShuttle will redress that injury because Plaintiffs will be able to continue utilizing and its established franchise business model.  Accordingly, the court should find that SuperShuttle has standing to pursue this lawsuit and deny Defendants' Motion to Dismiss.

---

[6] These allegations are described in detail in paragraphs 60-101 in SuperShuttle's Complaint.

E.     **The Present Action Is Not Barred By The Eleventh Amendment Because SuperShuttle Is Seeking Prospective Injunctive And Declaratory Relief.**

The Defendants erroneously claim that this "action is jurisdictionally barred from federal court by the Eleventh Amendment to the United States Constitution." Mot. 3:5-6. It has been well-established for over one-hundred years since the Supreme Court's seminal decision in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), that federal courts have jurisdiction to hear suits seeking prospective injunctive and declaratory relief against state officials. *See Ex Parte Young*, 209 U.S. at 155-56; *see also Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000) (holding that "courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers … to enjoin an alleged ongoing violation of federal law"); *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183-84 (9th Cir. 1997) ("[F]ederal courts have jurisdiction over suits against state officers to enjoin official actions that violate federal law, even if the state itself is immune from suit"); *Committee to Save Mokelume River v. East Bay Municipal District*, 13 F.3d 305, 309-310 (9th Cir. 1993) ("[T]he [plaintiff] seeks only prospective equitable relief, which is not barred by the Eleventh Amendment").[7] The Ninth Circuit has stated that the *Ex Parte Young* doctrine is "alive and well" in federal jurisprudence and that it is premised on the notion that a state cannot authorize one of its agents to violate the Constitution and the laws of the United States. *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d at 1045, 1048 ("We start with the principle that the *Young* doctrine is alive and well"); *see also Sofamor Danek Group, Inc. v. Brown*, 124 F.3d at 1179 (holding that the *Ex Parte Young* exception is based on the premise "that a state cannot authorize one of its agents to violate the Constitution and laws of the United States"). A state officer acting in violation of the Constitution or federal law is "stripped of his official or representative character" and consequently, is not shielded from suit. *Sofamor*

---

[7] The cases cited by the Defendants in their Motion to Dismiss involve plaintiffs seeking retroactive monetary relief

13

*Danek Group, Inc. v. Brown*, 124 F.3d at 1183-84. As a result, state officials may be subject to suit in federal court to permit the federal courts vindicate federal and Constitutional rights and hold the state officials responsible to the "supreme authority of the United States." *Ex Parte Young*, 209 U.S. at 160; *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d at 1184. In addition, the *Ex Parte Young* exception permits federal courts to "enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).

The Supreme Court has set forth a test for determining whether the doctrine of *Ex Parte Young* applies to avoid an Eleventh Amendment bar to suit. *See Verizon Md., Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 644, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002). Justice Scalia held in *Verizon Md., Inc. v. Public Serv. Comm'n of Maryland* that "[a] court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. at 644. If a complaint satisfies this basic test, then plaintiff's claims are not barred by the Eleventh Amendment. *See ACS of Fairbanks, Inc. v. GCI Comm. Corp.*, 321 F.3d 1215, 1216 (9th Cir. 2003) (applying *Verizon Md., Inc.* test and holding that plaintiffs can seek injunctive and declaratory relief against state officials because plaintiffs suit properly fell within the *Ex Parte Young* exception); *see also Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d at 1049 (permitting plaintiffs to seek a declaratory judgment against the state and its officials); *La Raza Unida v. Volpe*, 337 F. Supp. 221, 234 (N.D Cal. 1971) (holding that the doctrine of *Ex Parte Young* applies and issuing a preliminary injunction against state defendants).

///

///

and are thus inapposite. Mot. 3:9-17.

14

Defendants' claim that this action is barred by Eleventh Amendment sovereign immunity is incorrect as SuperShuttle's claim undoubtedly falls within the *Ex Parte Young* exception. SuperShuttle's claims pertain solely to prospective injunctive and declaratory relief. SuperShuttle is asking this Court to issue an injunction based on violations of the Constitution and the laws of the United States against EDD and/or its agents from engaging in any future actions utilizing the Taxicab Information Sheet to invalidate SuperShuttle's licensing and franchise agreements. SuperShuttle is also asking this Court to issue an injunction against the Defendants and/or its agent to prevent them from enforcing an "underground regulation" that deprives SuperShuttle of its property by requiring SuperShuttle to make full payment of a penalty before affording SuperShuttle notice and an opportunity to be heard. SuperShuttle is not seeking any retroactive relief and has narrowly fashioned its relief request to scrupulously adhere to the requirements of the *Ex Parte Young* exception set forth by the Supreme Court and the Ninth Circuit. As such, SuperShuttle's suit against the Defendants is not barred by the Eleventh Amendment and this Court should deny Defendants' Motion to Dismiss on this ground.

**F.   Any Exaction Imposed By EDD Is Not A "Tax" For Purposes Of The Tax Injunction Act.**

Defendants also claim in its Motion to Dismiss that the Tax Injunction Act is at issue here in this case and prohibits the court from adjudicating the suit. Mot. 4:1-2. As a general matter, this lawsuit does not involve tax issues – a fact that the Defendants freely acknowledge on pages 3 and 5 of their Motion to Dismiss. Indeed, the Defendants concede that payment of taxes is not at issue in this case since "no assessment" has been made against SuperShuttle. Mot. 3:3-4. The complaint Clearly states that Plaintiffs are only asking the Court to issue prospective equitable relief against the Defendants to prevent them from utilizing "underground regulations" (the Taxicab Information Sheet and EDD's policy of requiring payment of a penalty before appeal rights are granted) to violate the Constitutional rights of Plaintiffs.

15

In addition, even assuming *arguendo* that this is somehow a "tax" case, nothing the EDD could impose on SuperShuttle would constitute a "tax" within the meaning of the Tax Injunction Act. Congress clearly did not intend for every exaction by state authorities to be a tax when it enacted the Tax Injunction Act. *See Hexom v. Oregon Dept. of Transportation*, 177 F.3d 1134, 1135 (9th Cir. 1999); *see also Pacific Bell Tel. Co. v. City of Hawthorne*, 188 F. Supp. 2d 1169, 1176 (C.D. Cal. 2001) (denying defendants motion to dismiss and holding that "[n]ot every assessment by the State constitutes a 'tax' for purposes of the [Tax Injunction Act]"). To be sure, it was certainly not Congressional intent to remove federal court jurisdiction in every situation whenever a defendant might claim that any exaction imposed by it is a "tax." *See Hexom v. Oregon Dept. of Transportation*, 177 F.3d at 1135. Therefore, the threshold issue is what constitutes a "tax" for the purposes triggering the Tax Injunction Act? The Ninth Circuit has addressed this issue directly and established a three-part test for determining whether an exaction imposed by a state entity is a tax for the purposes of invoking the protections of the Tax Injunction Act. *See Bidart Brothers v. California Apple Comm'n*, 73 F.2d 925, 931 (9th Cir. 1996). In *Bidart Brothers*, the Ninth Circuit stated that a court must take into consideration "three primary factors in determining whether an assessment is a tax: (1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used in the regulation or benefit of the parties upon whom the assessment is imposed." *Bidart Brothers v. California Apple Comm'n*, 73 F.2d at 931; *see also Qwest v. City of Berkeley*, 146 F. Supp. 2d 1081, 1091-93 (N.D. Cal. 2001) (applying the three-part *Bidart Brothers* test and denying motion to dismiss finding that charges imposed by the City of Berkeley do are not taxes within the meaning of the Tax Injunction Act).

The Ninth Circuit in *Bidart Brothers* also provided some additional guidance for lower courts to take into consideration when applying the three part test. With regard to the first factor,

the court further stated that "[a]n assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency." *Id.* As for the second factor, the court held that "[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Id.* Lastly, where the first two factors are not dispositive, a court examining whether an assessment is a tax is to examine what is the purpose or use of the assessment truly is. *See Hexom v. Oregon Dept. of Transportation*, 177 F.3d at 1138 (noting that "even monies paid into the general fund of a treasury are not necessarily taxes"); *see also Bidart Brothers v. California Apple Comm'n*, 73 F.2d at 933 (holding that monies collected by a non-legislative body and "spent for a purpose that does not directly benefit the pubic at large" is not a tax under the Tax Injunction Act); *Union Pacific Railroad Co. v. Pub. Util. Comm'n of the State of Oregon*, 899 F.2d 854, 859 (9th Cir. 1990) (holding that a levy "designed to recoup the costs of a regulatory program from the members of the industry regulated, rather than to raise general revenue" is not a tax); *Pacific Gas and Elec. Co. v. City of Union City*, 220 F. Supp. 2d 1070, 1084 (N.D. Cal. 2002) (denying the County of San Francisco's motion for summary judgment holding that the Tax Injunction Act does not apply when assessments are used for general regulatory purposes). Applying these factors to the present case undoubtedly demonstrates that any exaction imposed by EDD is not a "tax" under the Tax Injunction Act.[8]

As to the first factor, it is undisputed that the EDD is not a legislative body, but rather a state administrative agency. This would weigh in favor of a finding that anything levied by the

---

[8] Again, Defendants' reliance on the decisions cited in support of their Tax Injunction Act argument is misplaced as the exactions levied in those cases were imposed directly by the state legislature and on broad class of parties. *See, e.g., Franchise Tax Bd. V. Alcan Aluminum*, 493 U.S. 331 (1990) (state corporate income tax); *In Great Lakes Co. v. Huffman*, 319 U.S. 293 (1943) (state sales and use tax); *May Trucking Co. v. Oregon Dept. of Transp.*, 388 F.3d 1261 (9th Cir. 2004) (state sales tax); *Jerron West, Inc. v. State of Cal. State Bd. Of Equalization*, 129 F.3d 1334 (9th Cir. 1997) (state sales tax); *Comenout v. State of Washington*, 722 F.3d 574 (9th Cir. 1983) (state sales tax); *Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107 (9th Cir. 1982) (state corporate income tax); *Mandell v. Hutchinson*, 494 F.2d 364 (9th Cir. 1974) (state property tax); *Kelly v. Springett*, 527 F.2d 1090 (9th Cir. 1974) (state income tax); *Randall v. Franchise Tax Bd.*, 453 F.2d 381 (9th Cir. 1971) (state personal income tax); *Aronoff v. Franchise Tax Bd.*, 348 F.2d 9 (9th Cir. 1965) (state personal income tax); *West Pub. Co. v McColgan*, 138 F.2d 320 (9th Cir. 1943) (state corporate income tax); *Corbett v. Printers and Publishers Corp. Ltd.*, 127 F.2d 195 (9th Cir.

17

EDD on SuperShuttle is not a tax.  Second, exactions by the EDD are imposed only on a narrow set of parties – companies that utilize employees in the state of California.  This narrow imposition also weighs in favor of SuperShuttle.  As these two factors are dispositive in SuperShuttle's favor, it is unnecessary to examine the third factor, but even if the third factor is considered, it shows that any exaction[9] imposed by EDD is not a tax because the ultimate use is not to raise general revenues, but to support and recoup costs of an extensive regulatory system overseeing employers, employees and job seekers in California.  Indeed, EDD's mission statement as set forth on its public website is not to raise general revenue for the state, but is much more limited in scope.  It states specifically that EDD is tasked with the mission of "promot[ing] California's economic growth by providing services to keep employers, employees, and job seekers competitive." *http://www.edd.ca.gov/About_EDD/Mission_and_Vision.htm*.  This is clear acknowledgment by EDD that any levy imposed by it on SuperShuttle is not a tax and simply used to support a comprehensive regulatory system overseeing employers, employees and job seeks.

     i.     **The Tax Injunction Act does not apply when the court is addressing the issue of state tax administration and/or procedure.**

As discussed, *supra*, any exaction imposed by the Defendants would not be a "tax" for triggering the protections of the Tax Injunction Act.  Nevertheless it should also be noted that the

---

1942) (state sales tax); *Berry v. Alameda Board of Supervisors*, 753 F. Supp. 1508 (N.D. Cal. 1990) (state property tax); *Nevada-California Electric Corp. v. Corbett*, 22 F. Supp. 951 (N.D. Cal. 1938) (state use tax).

[9] With respect to California Unemployment Insurance Code Section 13052.5, the text of the state indisputably states that any levy by the EDD under this provision is a "penalty" and not a tax.  California Unemployment Insurance Code Section 13052.5 reads as follows:

> In addition to the **penalty** imposed by Section 19183 of the Revenue and Taxation Code (relating to failure to file information returns), if any person, or entity fails to report amounts paid as remuneration for personal services as required under Section 13050 of this code or Section 6041A of the Internal Revenue Code on the date prescribed thereof (determined with regard to any extension of time for filing), that person or entity may be liable for a **penalty** determined under subdivision (b).

Cal. Unemployment Ins. Code § 13052.5 (emphasis added).

It is well-established that a "penalty" is not the same thing as a tax.  *See Tyler v. County of Alameda*, 34 Cal. App. 4th 777, 783 (Cal. Ct. App. 1995).

18

Tax Injunction Act does not apply to bar a plaintiff's lawsuit when the claim pertains to the issue of state tax administration. *See Hibbs v. Winn*, 542 U.S. 88, 105, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004) ("Nowhere does the legislative history [of the Tax Injunction Act] announce a sweeping congressional directive to prevent 'federal-court interference with all aspects of state tax administration'"); *see also Luessenhop v. Clinton County*, 466 F.3d 259, 265 (2nd Cir. 2006) ("[S]ummarily dismissing plaintiffs' causes of action because they pertain to state tax administration ... would be a patent misreading of the [Tax Injunction Act]"). The Supreme Court stated in *Hibbs* that the Tax Injunction Act only applies in situations where "state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Id.* at 108. As stated earlier, any exaction imposed by EDD is not a tax, but in addition, case law establishes that the Tax Injunction Act does not prohibit this court from hearing the lawsuit because SuperShuttle simply objects to the actions and the procedures used by the EDD in its audit. Namely, SuperShuttle objects to EDD's application of an "underground regulation" to invalidate vested contractual rights between SuperShuttle and its franchisees along with EDD's attempt to deprive SuperShuttle of its vested property rights without providing SuperShuttle a pre-deprivation hearing. This cause of action is not barred by the Tax Injunction Act as it simply addresses an issue of state tax administration and procedure. Accordingly, this Court should deny Defendants' Motion to Dismiss on this issue.

**G.**      **Plaintiffs Do Not Need To Exhaust Administration Remedies As It Has Filed An Action Under Title 42 Section 1983.**

Defendants claim in their motion to dismiss that "[p]laintiffs have not exhausted their state administrative remedies. Mot. 5:27. Defendants' argument is unavailing because it is well-established by Supreme Court and the Ninth Circuit precedent that there is no exhaustion requirement for claims arising under 42 U.S.C. § 1983. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982). In *Patsy*, the Supreme Court held that exhaustion

of state administrative remedies is not a prerequisite to filing a federal action under 42 U.S.C. §

1983. *Id.*; *see also Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir.

2007) ("The Supreme Court has explained that 'exhaustion of state administrative remedies is not

a prerequisite to an action under § 1983'") (citing *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516,

102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982)); *Alexander v. City of Menlo Park*, 787 F.2d 1371, 1375

(9th Cir. 1986) (holding that "exhaustion of remedies is not required under Section 1983"); *Heath*

*v. Cleary*, 708 F.2d 1376, 1378-79 (9th Cir. 1983) ("[D]istrict court erred in granting defendants'

motion for summary judgment" because a plaintiff need not exhaust administrative remedies when

filing an action under 42 U.S.C. § 1983); *Barberic v. City of Hawthorne*, 669 F. Supp. 985, 995

(C.D. Cal. 1987) ("[T]he authorities are clear that a § 1983 plaintiff does not have to exhaust state

remedies").

   In addition, there is no need to exhaust state administrative remedies with regard to the

other Constitutional claims set forth by SuperShuttle in its Complaint as those causes of action

come in through the broad provisions of Title 42 U.S.C. § 1983.  It has been long-standing that

Section 1983 serves as the procedural device for enforcing the substantive provisions of the

Constitution and the laws of the United States. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.

1991) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L.

Ed. 2d 508 (1979)).  To prevail on a Section 1983 claim, a plaintiff must show that (1) the

defendant acted under color of state law, and 2) that the defendant deprived the plaintiff of a right

secured by the "Constitution or laws of the United States."  42 U.S.C. § 1983 (2009); *see also*

*Crumpton v. Gates*, 947 F.2d at 1420.

   Here, the law is clear that SuperShuttle need not exhaust available state remedies before

bringing a claim under 42 U.S.C. § 1983.  Moreover, SuperShuttle has alleged a prima facie case

under 42 U.S.C. § 1983 because SuperShuttle has alleged that Defendant Henning, the EDD and

the Doe Defendants acted "under color of law" within the meaning of section 1983.  SuperShuttle alleges in its complaint that the Defendants acted pursuant to an expressly adopted official state policy or longstanding practice or custom of the Department when utilized an "underground regulation" (i.e., the Taxicab Information Sheet) to violate SuperShuttle's Constitutional rights by invaliding SuperShuttle's licensing and franchise contracts.  In addition, SuperShuttle has alleged that Defendants presently is utilizing another "underground regulation" requiring that a penalty imposed under California Unemployment Insurance Code § 13052.5 be paid in full before petition rights are obtained.

These rights are secured via 42 U.S.C. § 1983.  Accordingly, Defendants' argument that SuperShuttle's failure to exhaust state administrative remedies must fail.

## III.    CONCLUSION

For the foregoing reasons, SuperShuttle respectfully requests that the Defendants' Motion to Dismiss be denied.

Dated: November 2, 2009

MARRON LAWYERS

By: _Paul Marron_
Paul Marron, Esq.
Jerome Burger, Esq.
Attorneys for Plaintiffs SuperShuttle
International, Inc., SuperShuttle Franchise
Corporation, SuperShuttle Los Angeles, Inc.,
Mini-Bus Systems, Inc., Sacramento
Transportation Services, Inc., SuperShuttle
San Francisco, Inc. and Cloud 9 Shuttle, Inc.

**Plaintiff's Opposition to Defendants' Motion to Dismiss Complaint 3:09-CV-01825-JAH (NLS)**
012164/2007-1080